Filed 7/6/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VIAVIEW, INC., | H041521 |
| Petitioner and Respondent, | (Santa Clara County Super. Ct. No. 114CH005460) |
| v. | |
| THOMAS RETZLAFF, | |
| Respondent and Appellant. | |

THE COURT.[*]—

Petitioner and respondent ViaView, Inc. (a corporation, hereafter "ViaView") filed a petition for a workplace violence restraining order (Code Civ. Proc., § 527.8)[1] against respondent and appellant Thomas Retzlaff. Retzlaff, a resident of Texas, filed a motion to quash the petition for lack of personal jurisdiction. He also filed other motions, either concurrently with or after he filed the motion to quash. The trial court concluded that Retzlaff had made a general appearance since he had participated in the litigation beyond filing the motion to quash,. On that basis, it denied the motion to quash.

We conclude the trial court erred when it denied the motion to quash. The motion should have been granted because under section 418.10, subdivision (e), a party who moves to quash may—concurrently with or after filing a motion to quash—participate in the litigation and "no act" by the party constitutes an appearance unless and until the

---

[*]Before Rushing, P.J., Premo, J., and Márquez, J.

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

proceedings on the motion to quash are finally decided adversely to that party. (§ 418.10, subd. (e); *Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 425-427 (*Air Machine*).) We will therefore grant writ relief, vacate the trial court's order denying the motion to quash, and direct the court to enter a new order granting the motion.

## FACTS & PROCEDURAL HISTORY

James McGibney, a resident of California, is the CEO and founder of ViaView, which operates the websites BullyVille, CheaterVille, and others. Retzlaff, who at all relevant times resided in Texas or Arizona, is a critic of the BullyVille and CheaterVille websites.

On March 17, 2014, ViaView filed a petition for a workplace violence restraining order against Retzlaff. The petition alleged that Retzlaff had made credible threats of violence against McGibney to be carried out at his workplace. (McGibney works out of his home.) ViaView's petition described 29 social media postings or e-mails allegedly authored by Retzlaff, four of which could be construed as containing threats of violence.[2] In February 2014,[3] McGibney reported the alleged threats to the San José Police Department, which recommended he petition the court for a restraining order. The petition asked for a restraining order on behalf of McGibney, McGibney's wife, and their three young children.

---

[2] McGibney and ViaView made the same allegations against Retzlaff and others in two other lawsuits filed in state court in Texas and in the federal district court for the Northern District of California, which alleged causes of action for defamation, tortious interference with business relations, invasion of privacy, and other related torts.

[3] All further date references are to events that occurred in 2014.

2

## A. The March 17, April 8, and May 12 Ex Parte Hearings

ViaView asked for a temporary restraining order (TRO) against Retzlaff, which the court granted in an ex parte hearing on March 17, the day the petition was filed. Among other things, the TRO directed Retzlaff not to "[e]ngage in . . . defamation, stalk, threaten, or harass friends or business associates" and to stay at least 300 feet away from McGibney, his workplace, home, vehicle, family members, and his childrens' school or child care facility. The court set the matter for a hearing on ViaView's request for a permanent injunction on April 8.

McGibney and ViaView's attorney, Jason Leiderman, appeared at the April 8 hearing on the permanent injunction. Leiderman advised the court that ViaView had not yet served Retzlaff. He asked the court to continue the hearing and reissue the TRO. Throughout the hearing, the court questioned whether it had jurisdiction over Retzlaff, who lived in Texas. ViaView argued that the court had personal jurisdiction because Retzlaff's conduct was directed at California since he published McGibney's California address and was "telling people to go kill [McGibney] and rape his wife here in San Jose." ViaView submitted a brief and "a massive stack of proof" to support its allegations, which the court agreed to read over a break. (Neither the brief nor the "massive stack of proof" is in the record.)

After reviewing ViaView's submissions, the court agreed to extend the TRO for 30 days to allow ViaView to serve Retzlaff. The court also continued the hearing on the permanent injunction to May 12.

At the May 12 hearing, ViaView advised the court that Retzlaff had moved to Phoenix, Arizona, and had not been served. ViaView then asked the court to reissue the TRO and to add Retzlaff's adult daughter (Daughter) as a protected person under the TRO. ViaView conceded that Daughter was not its employee, but argued that she qualified for protection under section 527.8 as a volunteer since she was providing

3

ViaView with information about Retzlaff. The court noted that section 527.8 applies to "a volunteer or independent contractor who performs services for the employer at the employer's worksite." (§ 527.8, subd, (b)(3).) It questioned whether the statute applies to Daughter, who lives in a foreign country. ViaView responded that it is an Internet-based company with at least 20 worksites since most of its employees work remotely out of their homes.

The court reissued the TRO and continued the hearing on the permanent injunction to July 29. The court found that Daughter was a volunteer within the meaning of section 527.8, and it amended the TRO to add Daughter as a protected person. The court also ordered "Retzlaff and all other owners, operators and administrators" of a specified blog to "remove the blog from the internet and cease their campaign of threats, harassment and stalking of Mr. McGibney and not re-post any blogs with similar content."

**B. Service of Petition, Motion to Quash, and Other Court Filings**

Retzlaff was purportedly served on July 14. (The proof of service is not in the record.) On July 21, Retzlaff—who was self-represented—filed a motion to quash on the ground the court lacked personal jurisdiction over him since he lived in either Texas or Arizona at all relevant times and he did not have minimum contacts with California.

ViaView filed written opposition to the motion. ViaView argued that Retzlaff's contacts with California were prolific, intentional, and repeated, and that by making criminal threats to a California resident, Retzlaff had purposefully availed himself of the forum. ViaView's opposition included a declaration signed by McGibney, which stated that Retzlaff had continued to make threats of violence toward him and his family, but provided little specific information about the alleged new threats. McGibney's declaration was not signed under penalty of perjury under the laws of the State of California as required by section 2015.5.

4

On July 21—the same day he filed his motion to quash—Retzlaff filed an ex parte motion to continue the July 29 hearing on the permanent injunction because he had just had abdominal surgery and could not travel for the hearing. The court did not rule on the ex parte motion until July 29, as discussed below.

On July 25, Retzlaff filed a "Notice . . . of Perjury . . . by . . . McGibney" which asserted that McGibney had lied to the court about his military experience and computer expertise and falsely claimed specialized knowledge to obtain the TRO.

## C. July 29 Hearing on Motion to Continue, Motion to Quash, Anti-SLAPP Motion, and Permanent Injunction

*Motion to Continue*—Attorney Katrina Saleen specially appeared at the July 29 hearing on behalf of Retzlaff. Before the hearing, but after filing his motion to quash, Retzlaff had attempted to file a special motion to strike the petition for a workplace violence restraining order under section 425.16, the anti-SLAPP statute. Saleen stated that the court clerks refused to file the anti-SLAPP motion because the ex parte motion to continue was still undecided. Before considering the motion to continue, the court agreed to file the anti-SLAPP motion and indicated that it was prepared to hear it. Although ViaView had not been served with the anti-SLAPP motion, Leiderman said he believed he could argue it that day. The court then denied the motion to continue the hearing.

*Motion to Quash*—ViaView (1) urged the court to treat Retzlaff's notice of alleged perjury by McGibney as an answer, (2) requested a finding that the court had jurisdiction over Retzlaff because Retzlaff had filed an answer, and (3) repeated its contention that the court had jurisdiction over Retzlaff because he had directed his conduct at a California resident. After hearing from both sides, the trial court denied the motion to quash in open court. The court "found that the making of the [anti-]SLAPP motion itself constituted a general appearance." Neither the court nor the parties prepared a written order denying the motion to quash.

5

*Anti-SLAPP Motion*—The court then heard the anti-SLAPP motion. It denied that motion orally in open court. The court reasoned that since Retzlaff denied making any threats, there is no speech to protect, and Retzlaff had therefore failed to carry his initial burden of demonstrating that what he said was constitutionally protected.

*Permanent Injunction*—At the hearing on the permanent injunction, ViaView presented documentary evidence, but no live testimony. Leiderman asked to be added as a protected person, arguing that Retzlaff had been conflating him with McGibney and encouraging others to file fraudulent lawsuits against him. After the hearing, the court granted a permanent injunction against workplace violence. In addition to McGibney and his family, the order lists Daughter and Leiderman as protected persons. The court also ordered Retzlaff to pay ViaView $10,000 in "costs" for the three TRO hearings and the hearing on the permanent injunction.

### D. New Trial Motion

Retzlaff filed a timely motion for a new trial in which he challenged the court's orders (1) denying the motion to quash, (2) denying the motion to strike, and (3) granting the permanent injunction. The new trial motion was denied by operation of law on September 28. (§ 660.) On October 10, Retzlaff filed a timely notice of appeal.

### DISCUSSION

## I. *Preliminary Matters*

### A. No Special Consideration is Given to a Self-Represented Party

In his opening brief and in other submissions, Retzlaff argues that he is a self-represented party and therefore entitled to special consideration, including "the full measure of pro se Constitutional protections and the benefit of the doubt." Retzlaff has

6

not received special consideration from this court because he is self-represented.  While a party may choose to act as his or her own attorney, " 'such a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.  [Citation.]'  [Citation.]  Thus, as is the case with attorneys, [self-represented] litigants must follow correct rules of procedure.  [Citations.]"  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524 ["Although plaintiffs appear in this court without counsel, that does not entitle them to special treatment"].)

## B. ViaView's Failure to Provide Record Citations and Reliance on Matters Outside the Record

ViaView's original respondent's brief did not contain any citations to the record. On April 12, 2016, this court issued an order setting forth legal authority regarding the requirement to cite to the record, and we ordered ViaView to file an amended brief "which shall contain appropriate citations to the record in compliance with" that authority.  We also ordered that the amended brief "shall not refer to matters outside the record," citing to *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 and *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.  Despite our order, ViaView's amended brief—including its argument on the motion to quash—recites facts that are not supported by citations to the record, and it continues to refer to matters outside the record.  In light of our prior order and the legal authority set forth therein, we will disregard all factual assertions in ViaView's amended respondent's brief that are not supported by citations to the record or that refer to matters outside the record.

7

## II. *Motion to Quash for Lack of Personal Jurisdiction*

### A. General Principles

Under California's long-arm statute, California courts may exercise personal jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (§ 410.10.) "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc*. (1996) 14 Cal.4th 434, 444 (*Vons*), quoting *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) "The due process clause is concerned with protecting nonresident defendants from being brought unfairly into [a forum state], on the basis of random contacts." (*Vons*, at p. 452.)

"Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.' [Citations.]" (*Vons*, *supra*, 14 Cal.4th at p. 445, italics omitted.) Specific jurisdiction exists when, although the defendant lacks such pervasive forum contacts that the defendant may be treated as present for all purposes, it is nonetheless proper to subject the defendant to the forum state's jurisdiction in connection with a particular controversy. (*Epic Communications, Inc. v. RichwaveTechnology, Inc*. (2009) 179 Cal.App.4th 314, 327.)

ViaView argued below that the court has specific jurisdiction over Retzlaff. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the

litigation." ' " (*Walden v Fiore* (2014) 571 U.S. ___; [134 S.Ct. 1115, 1121] (*Walden*); accord, *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).)

## B. Burden of Proof and Standard of Review

On a challenge to personal jurisdiction by a motion to quash, the plaintiff has the burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction. (*Vons*, *supra*, 14 Cal.4th at p. 449.) The plaintiff must come forward with affidavits and other competent evidence to carry this burden and cannot simply rely on allegations in an unverified complaint. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110.) If the plaintiff meets this burden, "it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable." (*Vons*, at p. 449.)

"When the evidence of jurisdictional facts is not in dispute, the issue whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review. (*Vons*, *supra*, 14 Cal.4th at p. 449.) When evidence of jurisdiction is in dispute, we accept the trial court's resolution of factual issues, draw all reasonable inferences in support of the trial court's order, and review the trial court's determination of factual issues for substantial evidence. [Citations.] 'The ultimate question whether jurisdiction is fair and reasonable under all of the circumstances, based on the facts which are undisputed and those resolved by the court in favor of the prevailing party, is a legal determination warranting our independent review.' [Citation.]" (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17 (*Burdick*).)

## C. Nature of a General Appearance

A defendant submits to the court's jurisdiction by making a general appearance in an action and thereby waives the defense of lack of personal jurisdiction. (*Roy v.*

9

*Superior Court* (2005) 127 Cal.App.4th 337, 341 (*Roy*).) " 'A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed.' [Citation.] Such participation operates as consent to the court's exercise of jurisdiction in the proceeding. 'Unlike jurisdiction of the subject matter . . . jurisdiction of the person may be conferred by consent of the person, manifested in various ways' including a 'general appearance.' [Citations.] By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process. [Citation.]" (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 7-8.)

### D. Waiver of Jurisdiction and Statutory Procedures for Challenging Jurisdiction

The traditional rule in California was "that a defendant who chooses to litigate the merits of a lawsuit after its motion to quash has been denied has no right to raise the jurisdictional question on appeal. [Citations.] It was said that by contesting the merits, ' "the defendant made a general appearance and submitted itself to the jurisdiction of the court" ' and ' "thereby waived any right it may have had to insist that jurisdiction of its person had not been obtained." ' " (*State Farm General Ins. Co. v. JT's Frames, Inc*. (2010) 181 Cal.App.4th 429, 437 (*State Farm*), citing *Jardine v. Superior Court* (1931) 213 Cal. 301, 304.)

In 1955, the Legislature made changes to the Code of Civil Procedure that (1) "extended the time within which a defendant who moved to quash was required to respond to the complaint, giving the defendant until after service of an order denying the motion"; (2) provided for appellate review by way of a petition for writ of mandate and (3) "gave a defendant who sought a writ additional time to plead, precluding entry of default while the writ petition was pending." (*State Farm*, *supra*, 181 Cal.App.4th at p. 438, citing former sections 416.1 and 416.3.) The current statutory scheme continues

10

"to provide that a party whose motion to quash has been denied may seek relief through a petition for writ of mandate and continue[s] to specify that the time to respond to the complaint does not expire while the motion to quash and the writ are pending." (*Id*. at p. 439, citing § 418.10, subds. (b), (c).)

In 2002, the Legislature added subdivision (e) to section 418.10, the statute that currently governs motions to quash. (Stats. 2002, ch. 69, § 1.) Under subdivision (e), a defendant or cross-defendant may move to quash and "simultaneously answer, demur, or move to strike the complaint or cross-complaint." (§ 418.10, subd. (e).) Moreover, "no act" by a party who first makes a motion to quash, "including filing an answer, demurrer, or motion to strike," constitutes an appearance "unless the court denies the motion." (§ 418.10, subd. (e)(1).) If the trial court denies the motion, the defendant is "not deemed to have generally appeared until entry of the order denying the motion." (*Ibid*.) And if the party whose motion to quash has been denied files a timely petition for writ of mandate, that party "is not deemed to have generally appeared until the proceedings on the writ petition have finally concluded." (§ 418.10, subd. (e)(2).) "[S]ubdivision (e) does not change the essential rule that '[a] defendant submits to the court's jurisdiction by making a general appearance in an action' by 'participat[ing] in the action in a manner which recognizes the court's jurisdiction.' (*Factor Health Management v. Superior Court* (2005) 132 Cal.App.4th 246, 250 . . . [(*Factor Health*)]; accord, *Roy . . . supra*, 127 Cal.App.4th at p. 341.) It merely delays the effect of such actions until the motion to quash is denied or, if the defendant seeks writ review, until proceedings on the writ have concluded." (*State Farm*, *supra*, 181 Cal.App.4th at pp. 440-441.)

Before we address the merits of Retzlaff's jurisdictional argument, we must first determine whether Retzlaff has made a general appearance, thereby waiving the jurisdictional defect. In our review of that question, we are presented with an issue regarding the appealability of the order on the motion to quash. Since "the question of

11

appealability goes to our jurisdiction, we are duty bound to consider it on our own motion." (*Olson v. Cory* (1983) 35 Cal.3d 390, 398 (*Olson*).)

### E. Appealability

Section 418.10 fixes the point in time at which a defendant who participates in litigation after filing a motion to quash will be deemed to have made a general appearance. (*State Farm*, *supra*, 181 Cal.App.4th at p. 442.) Subdivision (e)(1) of section 418.10 provides: "If the court denies the motion [to quash], the defendant or cross-defendant *is not deemed to have generally appeared until entry of the order denying the motion*." (Italics added.) Subdivision (e)(2) extends that time in cases where a party petitions for a writ of mandate: "If the motion . . . is denied and the defendant . . . petitions for a writ of mandate . . . , the defendant . . . *is not deemed to have generally appeared until the proceedings on the writ petition have finally concluded*." The petition for writ of mandate must be filed "within 10 days after service . . . of a *written notice of entry of an order of the court denying [the] motion*, or within any further time not exceeding 20 days that the trial court may for good cause allow." (§ 418.10, subd. (c).)

There is no written order denying the motion to quash in this case, and hence no notice of entry of order. The record does not reflect when the court's oral order was entered in the minutes. Moreover, since Retzlaff sought appellate review of the court's decision denying his motion to quash, section 418.10 subdivision (e)(2) extended the time he would not be "deemed to have generally appeared until the proceedings on the writ petition have finally concluded." (§ 418.10, subd. (e)(2).) Retzlaff had "10 days after service upon him [] of a written notice of entry of an order of the court denying his [] motion" to file a writ petition. (§ 418.10, subd. (c).) Since there was no written order on the motion to quash and neither the court nor ViaView served Retzlaff with "written notice of entry of an order denying" his motion to quash, the time for Retzlaff to file a

12

petition for writ of mandate challenging the court's order on the motion to quash has never run.

In *McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252 (*McCorkle*), the California Supreme Court held that the Legislature's decision to provide for appellate review of a trial court order denying a motion to quash by writ of mandate precluded review of such orders "upon appeal from a judgment entered after trial on the merits." (*Id.* at p. 257; see also *People v. Mena* (2012) 54 Cal.4th 146, 155-156 [in section 418.10, "the Legislature has made writ relief the exclusive avenue to address trial court error"].) But rather than file a petition for writ of mandate, as required by section 418.10, subdivision (c), Retzlaff filed this appeal. Although Retzlaff failed to petition for a writ of mandate, in "unusual circumstances," we may treat an appeal as a petition for an extraordinary writ. (*Olson*, *supra*, 35 Cal.3 at p. 401.) As we shall explain, after examining the factors from *Olson*, we conclude such circumstances are present here.

The procedural history of this case is unusual. The court heard Retzlaff's motion to quash, ruled on his anti-SLAPP motion, and conducted the trial on the permanent injunction all in the same day, only 15 days after Retzlaff was served. Invariably, a motion to quash is heard as a preliminary matter, before other motions attacking the pleadings and before proceedings on the merits. Moreover, the hearing on the permanent injunction resolved the issues presented by the workplace violence petition, and the record and the briefs are adequate for writ review. (*Olson*, *supra*, 35 Cal.3d at p. 401.) Both parties assert that the order denying the motion to quash is appealable, and the fact that the trial court is not a party is not an obstacle "since there is no indication that the court would . . . become more than a nominal party." (*Ibid.*)

To dismiss the appeal rather than exercise our power to reach the merits through a mandate proceeding would be " ' "unnecessarily dilatory and circuitous," ' " particularly since the time for Retzlaff to petition for writ of mandate has never run. (*Olson*, *supra*,

13

35 Cal.3d at p. 401.)  Given the threshold nature of the jurisdictional question, it would make no sense to dismiss the appeal as to that issue, decide the other issues presented, and then address the jurisdictional question in a later writ proceeding.  Instead, treating the appeal as a petition for writ of mandate avoids piecemeal litigation and further delay, and allows for an orderly examination of the issues presented.  Moreover, if we conclude—as we do—that the trial court erred in its jurisdictional ruling, that will end the litigation.  We shall therefore treat the appeal of the court's order denying the motion to quash as a petition for writ of mandate.

### F.  Analysis of Waiver Claim

Citing *State Farm*, ViaView argues that Retzlaff waived his jurisdictional challenge by litigating the merits of the petition for a workplace violence restraining order after his motion to quash was denied.  We disagree.

Under section 418.10, subdivision (e), "*no act* by a party who makes a [motion to quash], including filing an answer, demurrer, or motion to strike," before or concurrently with taking that action will be deemed a general appearance until litigation of the motion to quash is finally resolved adversely to the defendant.  (§ 418.10, subd. (e), italics added; *Air Machine*, *supra*, 186 Cal.App.4th at pp. 425-427.)  Courts have interpreted the italicized language broadly.  The *State Farm* court stated, for example, that "a party may answer, demur, move to strike *and perform other actions related to the merits* without fear of accidentally waiving a potentially meritorious attack on personal jurisdiction."  (*State Farm*, *supra*, 181 Cal.App.4th at p. 441, italics added; see also *Air Machine*, at p. 427 [the word "act" in section 418.10, subdivision (e)(1) applies "broadly"; it "means '*any* act' [by the defendant,] and is not limited to an 'act' that is defensive in nature"]; *Roy*, *supra*, 127 Cal.App.4th at p. 345 ["Nothing could be clearer:  a defendant may move

14

to quash coupled with *any* other action without being deemed to have submitted to the court's jurisdiction"].)

This case is distinguishable from other cases in which the defendant was found to have made a general appearance. In *Factor Health*, the court held that defendants who filed ex parte applications for discovery related to the merits of the case *before* filing their motion to quash had made a general appearance and submitted to the court's jurisdiction. (*Factor Health*, *supra*, 132 Cal.App.4th at pp. 250-252.) And in *Roy*, the court held that defendants who filed case management statements, attended conferences, propounded discovery, filed numerous motions to compel, requested continuances, and filed a motion for summary judgment *before* they filed their motion to dismiss for lack of personal jurisdiction had waived the jurisdictional defect. (*Roy*, *supra*, 127 Cal.App.4th at pp. 340, 346.) Unlike the defendants in *Factor Health* and *Roy*, Retzlaff filed his motion for a continuance *concurrently with* his motion to quash. He filed his notice of perjury by McGibney (which ViaView argued was the equivalent of an answer) and his anti-SLAPP motion *after* he filed the motion to quash. He also participated in the July 29 hearing *after* he filed the motion ot quash. Thus, Retzlaff preserved his jurisdictional claim by filing his motion to quash first. None of the actions he took concurrently with or after filing that motion will be deemed a general appearance unless and until this writ proceeding is decided adversely to him. (§ 418.10, subd. (e); *Air Machine*, *supra*, 186 Cal.App.4th at pp. 417, fn. 3, 421-422, 426.)

This case is also distinguishable from *State Farm,* in which the appellate court found the plaintiff had waived its right to contest personal jurisdiction. In that case, State Farm General Insurance, a California company, sued JT's Frames, Inc. (JTF), an Illinois corporation, in California for a declaration that State Farm's insurance policy did not cover JTF's claim against State Farm's insured. (*State Farm*, *supra*, 181 Cal.App.4th at pp. 433-434.) JTF moved to quash service for lack of personal jurisdiction. The trial

15

court denied the motion and JTF petitioned for a writ of mandate. (*Id.* at pp. 435-436.) While the writ petition was pending in the court of appeal, JTF propounded discovery, filed opposition to State Farm's choice of law motion, and opposed State Farm's motion for summary judgment. After the trial court granted summary judgment for *State Farm*, the appellate court summarily denied JTF's writ petition on the motion to quash. (*Id.* at p. 436.) Pursuant to section 418.10, subdivision (e)(2), once the writ proceeding was final, the actions JTF took while the "writ was pending that recognized the court's jurisdiction [were] 'deemed' to constitute a general appearance, and no further objection to jurisdiction [would] be permitted." (*Id.* at p. 441.)

After JTF's writ petition was denied, JTF appealed the summary judgment, as well as the order on the motion to quash, in effect seeking a second bite at the apple from the appellate court on the question of personal jurisdiction. (*State Farm*, *supra*, 181 Cal.App.4th at pp. 433, 437.) The appellate court concluded that the jurisdictional issue was not cognizable in the appeal. The court held that by participating "fully in resolving the merits of the litigation while the writ was pending, [JTF] submitted itself to the jurisdiction of the court and waived any further right to contest personal jurisdiction." (*Id.* at pp. 437, 441.) ViaView relies on this language from *State Farm* and argues that by participating in the hearing on the permanent injunction, Retzlaff waived his jurisdictional claim.

ViaView's reliance on *State Farm* is misplaced. Although the language quoted above, read out of context, supports ViaView's argument, it must be interpreted in light of the paragraph in which it appears. In that paragraph, the court stated: "However, subdivision (e) does not change the essential rule that '[a] defendant submits to the court's jurisdiction by making a general appearance in an action' by 'participat[ing] in the action in a manner which recognizes the court's jurisdiction.' [Citations.] It merely delays the effect of such actions until the motion to quash is denied or, if the defendant

16

seeks writ review, until proceedings on the writ have concluded. Once the motion is denied or writ proceedings have concluded, the actions undertaken by the defendant while the motion or writ was pending that recognized the trial court's jurisdiction will be 'deemed' to constitute a general appearance, and no further objection to jurisdiction will be permitted. [JTF], having participated fully in resolving the merits of the litigation while the writ was pending, submitted itself to the jurisdiction of the court and waived any further right to contest personal jurisdiction." (*State Farm*, *supra*, 181 Cal.App.4th at p. 441.) We emphasize that JTF's participation in the litigation was deemed a general appearance only because—unlike this case—its writ petition had been denied.

This case is distinguishable from *State Farm*. First, this appeal is Retzlaff's first attempt to obtain appellate review of the order denying his motion to quash. Second, unlike the appeal in *State Farm*, since we treat this appeal as a petition of writ of mandate, writ review of the order denying the motion to quash in this case is not yet final. And third, unlike JTF, Retzlaff has not attempted to appeal the court's ruling on the jurisdictional question after a writ petition was finally decided adversely to him. Thus, any act Retzlaff engaged in to defend against the workplace violence petition has not yet been deemed a general appearance. Since Retzlaff filed his motion to quash concurrently with or before taking any other action in response to the petition, and since his jurisdictional claim has not yet been deemed waived, we will proceed to consider it on the merits.

### G. Merits of Jurisdictional Claim

A nonresident defendant may be subject to the court's specific jurisdiction if three requirements are met: (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction would be

17

reasonable and comports with fair play and substantial justice. (*Pavlovich*, at p. 269; *Vons*, *supra*, 14 Cal.4th at pp. 446, 447.)

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation." ' [Citations.] For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." (*Walden*, *supra*, 134 S.Ct. at pp. 1121-1122.) "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State. [Citation.] Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. [Citation.] [The United States Supreme Court has] consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." (*Id.* at p. 1122, italics original.) "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." (*Ibid.*) "[M]ere injury to a forum resident is not a sufficient connection to the forum." (*Id.* at p. 1125.)

Since Retzlaff challenged personal jurisdiction by a motion to quash, ViaView had the burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of jurisdiction. (*Vons*, *supra*, 14 Cal.4th at p. 449.) To that end, ViaView was required to " 'present facts demonstrating that the conduct of [Retzlaff] related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." [Citation.]' " (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090-1091.) To carry this burden, ViaView was required to come forward with affidavits, declarations, and other competent evidence. (*In re Automobile Antitrust Cases I & II*, *supra*, 135 Cal.App.4th at p. 110.) If ViaView had met this burden, Retzlaff would then

have had the burden to demonstrate that the exercise of jurisdiction would be unreasonable.  (*Vons*, *supra*, 14 Cal.4th at p. 449.)

In his declaration in support of the motion to quash, Retzlaff stated that he resided in "Arizona and/or Texas," he has never lived in California, and he has never considered California his domicile.  He declared that he has never owned real property, voted, or held a driver's license in California, and that he has never done business in California or worked for a California employer.  He also said he has never sued or been sued in California, never consented to the jurisdiction of a California court, and never purposefully availed himself of the benefits or protections of California's laws.  Retzlaff also declared that he has "never had any communications with" McGibney, and has "never sent him any death threats, as alleged in his complaint."

McGibney did not present any evidence that disputed these facts.  As we have noted, McGibney's declaration in opposition to the motion to quash was not signed under penalty of perjury under the laws of the State of California as required by section 2015.5.  It therefore had no evidentiary value and we shall not consider it in our review of the jurisdictional issue.  (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 601-611 [declaration that does not comply with section 2015.5 is not sufficiently reliable to be admitted into evidence].)

ViaView's workplace violence petition was verified by McGibney as CEO of ViaView.  Generally, a properly verified complaint—or in this case a properly verified petition—may be treated as a declaration or affidavit.  (*Evangelize China Fellowship, Inc. v. Evangelize China Fellowship* (1983) 146 Cal.App.3d 440, 444.)  However, "when the verification is made on behalf of a corporation . . . by any officer thereof," as McGibney did on behalf of ViaView, "the pleadings shall not otherwise be considered as an affidavit or declaration establishing the facts therein alleged."  (§ 446, subd. (a).)  Thus, ViaView cannot rely on its verified petition to establish that Retzlaff had the

19

requisite minimum contacts with California. Since neither McGibney's declaration nor ViaView's petition have any evidentiary value on the jurisdictional question, we conclude that ViaView did not meet its evidentiary burden of proving, by a preponderance of the evidence, the factual bases justifying the exercise of personal jurisdiction over Retzlaff. (*Vons*, *supra*, 14 Cal.4th at p. 449.)

ViaView nonetheless argues there are sufficient minimum contacts for California to exercise personal jurisdiction because Retzlaff knew McGibney lived in San José and he published McGibney's California address on a blog. But to oppose the motion to quash, ViaView had to do more than rely on allegations. It had to produce admissible evidence that supported its jurisdictional facts. ViaView produced no evidence to support this assertion.

ViaView also argues that when a defendant commits a crime in the forum state, he purposefully avails himself of the forum. It argues that it is illegal to harass, threaten, and stalk an individual, and it asserts that jurisdiction is proper based on the criminal nature of Retzlaff's alleged threats against McGibney and his family. But this is a civil case, not a case about a prosecutor's ability to prosecute alleged criminal acts that originate outside the prosecutor's home state.

ViaView also asserts that Retzlaff's conduct implicated this state because "the San José Police Department and the District Attorney became heavily involved and began investigating Retzlaff's conduct." But ViaView did not present any competent evidence in opposition to the motion to quash that Retzlaff made the threats alleged in the petition or the additional threats McGibney complained of at the hearings on the TRO. While an offer of proof may have been sufficient at the ex parte hearing to obtain the TRO, more was required to oppose Retzlaff's motion to quash. In addition, there was no evidence the police or the district attorney are investigating this case other than an unauthenticated incident report card from the San José Police Department that was attached to the

20

petition. Even if we were to consider that incident report card, all it purports to show is that someone filed a police report.

Both parties cite *Burdick*, which involved the posting of allegedly defamatory material on Facebook. The court in *Burdick* held that posting defamatory statements about a person on social media or the Internet, "while knowing that person resides in the forum state, is insufficient in itself to create the minimum contacts necessary to support specific personal jurisdiction in a lawsuit arising out of that posting. Instead, it is necessary that the nonresident defendant not only intentionally post the statements . . . , but that the defendant expressly aim or specifically direct his or her intentional conduct at the forum, rather than at a plaintiff who lives there." (*Burdick*, *supra*, 233 Cal.App.4th at pp. 13, 25.)

The *Burdick* court observed that courts in a number of jurisdictions had held that online postings that are accessible by anyone who is interested in them, and are not specifically directed at the forum state, do not support exercising jurisdiction over the case. (*Id.* at pp. 20-21.) The court held that the plaintiffs in that case did not meet their evidentiary burden because they "did not produce evidence to show [that the defendant's] personal Facebook page or the allegedly defamatory posting was expressly aimed or intentionally targeted at California, that either the Facebook page or the posting had a California audience, that any significant number of Facebook 'friends,' who might see the posting, lived in California, or that the Facebook page had advertisements targeting Californians." (*Id.* at p. 25.) The court observed that while the allegedly defamatory Internet posting could be read as being expressly aimed at the plaintiffs, whom the defendant knew to be California residents, the plaintiffs did not present evidence that the postings were directed at the State of California or at a California audience. The court concluded: "The readers of the allegedly defamatory Facebook posting 'most likely

21

would be spread all around the country—maybe even around the world—and not necessarily in the [California] forum.' " (*Id.* at p. 27.)

Although both parties cite *Burdick*, they do not discuss whether or how its holdings apply to this case. ViaView contends the alleged threats were part of a campaign to harass and defame McGibney and destroy ViaView's businesses. It contends the threats were made on Twitter accounts and the comments page of an article on BullyVille. Thus, it argues, the threats were published to anyone who chose to access those accounts, and were not directed solely to McGibney and ViaView. But to the extent the threats were defamatory, ViaView failed to meet its burden to demonstrate that the threats were aimed at a California audience, that a significant number of California residents saw them, or that the social media platforms allegedly used by Retzlaff were targeted to California.

For all these reasons, we conclude that ViaView has failed to demonstrate with competent evidence that Retzlaff had sufficient minimum contacts with California such that the exercise of specific personal jurisdiction over him would comport with " 'traditional notions of fair play and substantial justice.' " (*Vons*, *supra*, 14 Cal.4th at p. 445.) We will therefore reverse the order on the motion to quash. In light of our conclusion, we need not reach the parties' contentions regarding the anti-SLAPP motion or the order granting the permanent injunction.

### III.   *Motions on Appeal*

While this appeal was pending, the parties filed 40 motions in this court. The court has already ruled on 19 of those motions. The court deferred ruling on 21 motions for consideration with the merits of the appeal. We have ruled on the pending motions by separate order, filed concurrently herewith.

22

**DISPOSITION**

Let a peremptory writ of mandate issue directing the superior court to vacate its order denying Retzlaff's motion to quash for lack of personal jurisdiction and enter a new order granting the motion to quash.  Retzlaff is awarded his costs in this appellate proceeding.


_____          _____
_____
    Rushing, P. J.                                Premo, J.                                  Márquez, J.

Trial Court:                                   Santa Clara County
                                               Superior Court No: 114CH005460

Trial Judge:                                   The Honorable Socrates Peter Manoukian

Respondent and Appellant                       pro per
Thomas Retzlaff

Attorneys for Petitioner and Respondent        Jason S. Leiderman,
ViaView, Inc.:                                 Law Offices of Jay Leiderman